WENZEL AND MARIE A. TIRHEIMER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tirheimer v. Commissioner
Docket No. 21766-89
United States Tax Court
T.C. Memo 1992-137; 1992 Tax Ct. Memo LEXIS 200; 63 T.C.M. (CCH) 2307; T.C.M. (RIA) 92137; March 9, 1992, Filed *200 Decision will be entered under Rule 155. Wenzel Tirheimer, pro se. Ramon Estrada, for respondent. HAMBLEN
HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in Wenzel and Marie A. Tirheimer's (petitioners) Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1983
$ 9,614
$ 481
[1]
$ 2,361
1984
11,659
583
[2]
2,915
1985
10,851
543
[3]
2,713
Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the taxable years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues for decision are: (1) Whether petitioners' horse-related activity was an activity engaged in for profit within the meaning of section 183; (2) whether petitioners' tax home *201 was in Los Angeles, California, for purposes of section 162, and if not, whether petitioners are entitled to deductions in excess of those allowed by respondent for employee business expenses; (3) whether petitioners are entitled to moving expenses in excess of those allowed by respondent; (4) whether the business expenses claimed relating to World-Wide Consultants, Ltd. (World-Wide), are ordinary and necessary expenses, and if so, whether expenses in excess of those substantiated are allowable; and (5) whether petitioners are liable for additions to tax under section 6653(a)(1) and (2) for negligence or intentional disregard of rules and regulations and under section 6661 for a substantial understatement of income tax for 1983, 1984, and 1985. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits are incorporated herein by this reference. Petitioners resided in Hemet, California, at the time they filed their petition in this case. Petitioners timely filed joint income tax returns for 1983, 1984, and 1985. During the years at issue, petitioners employed the cash method of accounting. In 1969 petitioners purchased *202 a 520-acre parcel of land in Bigfork, Minnesota. Petitioners maintained a personal residence on the Minnesota property. Petitioners initially moved to Minnesota to make a living farming the land. They did not buy the land in anticipation of reaping profits through appreciation of the land. Petitioners attempted numerous business ventures on the Minnesota property, including beef and cattle production, dairy farming, and a hay feed business. All of these ventures were abandoned based on a lack of profitability. In approximately 1979, after failing to achieve profits from any of the above ventures, petitioners decided to use the Minnesota property for selling, breeding, and showing horses (horse-related activities). Petitioners initially invested in grade (unregistered) horses. Subsequently, they purchased quarter horses. Petitioners owned six quarter horses during the taxable years at issue. None of petitioners' horses were studs. Instead they intended to use a stud service for breeding purposes. Mr. Tirheimer and his preteen son were primarily responsible for the horse-related activities. Petitioners' son was 12 years old during 1983. Mr. Tirheimer had prior experience *203 with horses from growing up on a family farm in Europe. Mr. Tirheimer and his son trained the horses and performed routine veterinary work (shots and worming). They did not ride the horses, but instead trained the horses with halters. They did not hire any permanent employees connected with the horse-related activity. For the most part, the horse-related activity took place only during the summer months. During the remaining portion of the years at issue, Mr. Tirheimer was employed mainly in southern California as an analyst in the defense industry. He spent approximately 75 percent of his time in southern California. While Mr. Tirheimer was away from Minnesota, Mrs. Tirheimer and their son took care of the horses. However, approximately 40 percent of the year, Mrs. Tirheimer and their son joined Mr. Tirheimer at his job locations. During these periods, a neighbor took care of and fed the horses. During the winter, the horses were not trained. Petitioners allowed the horses' winter coat to grow and kept the horses outside throughout the winter months. Petitioners reported farm losses of approximately $ 62,000 for the taxable years 1983 through 1985. During the same period, *204 they reported only $ 3,086 of income. This income consisted of bartering income and $ 86 in show fees. Petitioners entered into a bartering agreement with their neighbors whereby they would obtain horse feed in exchange for allowing their neighbors the right to graze their cattle on petitioners' land. Petitioners did not report the sale of any horses for the taxable years at issue. In addition, petitioners claimed an investment tax credit on their 1984 and 1985 returns in the amount of $ 3,097 and $ 1,724, respectively, relating to the horse-related activities. Petitioners did not conduct a market study or hire anyone to prepare a business plan for their horse-related activity. Instead, Mr. Tirheimer relied on conversations with horse breeders in Oklahoma, Wisconsin, Texas, and southern Minnesota. These persons told him that the horse business was "great" and that it was like "wildcat oil drilling". In addition, petitioners did not hire an accountant to set up their books for their horse-related activity. They paid the expenses for the activities with checks drawn on their personal checking account. They retained canceled checks and a ledger to substantiate the deductions *205 claimed for the activities. Petitioners did not maintain any journals or prepare budgets or income forecasts for the activities. Petitioners carried on the horse-related activity in Minnesota from 1979 until November 1985. In November of 1985 petitioners relocated their horses to Hemet, California, where they continued to conduct their horse-related activities and resided as of the date of trial. However, even after relocating to California, the horse-related activities continued generating losses. Petitioners' primary source of income for the taxable years at issue was derived from Mr. Tirheimer's independent contracts as a design and structural analyst in the defense industry. Petitioners claimed employee business expenses relating to Mr. Tirheimer's defense-related work of approximately $ 39,000 for the taxable years at issue. These expenses consisted of airfare, meals and lodging, and automobile expenses associated with Mr. Tirheimer's employment outside of Minnesota. Mr. Tirheimer worked for several employers during the years at issue. The jobs were primarily in the Los Angeles metropolitan area and are as follows: Jan. 1983 to May 1983
El Segundo, Cal. - Northrop Co.
Aug. 1983 to May 1984
El Segundo, Cal. - Northrop Co.
Sep. 1984 to Feb. 1985
Sherman Oaks, Cal. - U.S. Engineering
Feb. 1985 to June 1985
Whittier, Cal. - Self-employed
Nov. 1985 to Dec. 1985
Dallas, Tex. - Global Group
*206 In November and December of 1985, Mr. Tirheimer was temporarily employed in the Dallas area. The expenses associated with this employment were allowed by respondent in the statutory notice of deficiency. Mr. Tirheimer sought employment in southern California because industry publications indicated that defense-related work was available in this area. Mr. Tirheimer was hired to work on specific defense contracts. Each time that he was hired for a project, neither he nor his employer knew the exact duration of employment. Petitioners reported over $ 125,000 of income from Mr. Tirheimer's defense-related employment for the taxable years at issue. Mr. Tirheimer received a per diem amount for meals and lodging while performing some of the contracts. This amount was reported as income on petitioners' income tax returns. Mr. Tirheimer formed World-Wide and incorporated the business in Delaware. World-Wide was treated as a sole proprietorship on petitioners' returns for the taxable years at issue. The activities of World-Wide consisted of Mr. Tirheimer's efforts to obtain contracts to work as an analyst in the defense industry. In 1985, the only year at issue in which World-Wide *207 generated any income, Mr. Tirheimer was self-employed through services rendered at Douglas Aircraft Co. in Whittier, California. [1] Petitioners reported no profit for 1983 and 1984 and $ 20,691 of profit for 1985. Petitioners reported business expenses of approximately $ 5,000 for 1983 and 1984 and $ 7,000 for 1985. Respondent disallowed the claimed losses relating to World-Wide for 1983 and 1984 in full due to lack of substantiation and the failure to qualify as ordinary and necessary expenses. The expenses claimed for 1985 were disallowed on the same grounds. Petitioners' claimed expenses included advertising, supplies, automobile, depreciation, professional dues, laundry, resumes, taxes, office rent, utilities,and telephone. Petitioners relocated from Minnesota to Hemet, California, in September of 1985. In addition to household items, petitioners moved two trailers, a car, and five horses to California. *208 Petitioners claimed a moving expense deduction for the taxable year 1985 of $ 6,574, of which respondent disallowed approximately $ 2,500 which consisted of travel-en-route and premove house-hunting expenses. Petitioners did not have a travel log or any other substantiation relating to the disallowed moving expenses. OPINION 1. Horse-Related Activities
Respondent determined that petitioners were not engaged in the business of breeding, selling, and showing horses for profit pursuant to section 183 and denied petitioners' losses claimed on Schedules F of their returns for 1983, 1984, and 1985. Petitioners contend that they were engaged in the business with an actual and honest objective of making a profit. We find that the horse-related activities were not engaged in for profit. [2]
Section 183(a) provides generally that, if *209 an activity is not engaged in for profit, no deduction attributable to such activity shall be allowed. Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Deductions are allowed under these sections only when the taxpayer engaged in the activity with an actual and honest objective of making a profit. [3]Beck v. Commissioner, 85 T.C. 557, 569 (1985); sec. 1.183-2(a), Income Tax Regs. While a reasonable expectation of profit is not required, the facts and circumstances must indicate that the activity was entered into or continued with an actual and honest objective of making a profit. Hultler v. Commissioner, 91 T.C. 371 (1988); Allen v. Commissioner, 72 T.C. 28, 33 (1979). The existence of the requisite profit objective is a question of fact that must be determined based on the entire record. Dunn v. Commissioner, 70 T.C. 715 (1978), affd. 615 F.2d 578 (2d Cir. 1980); Benz v. Commissioner, 63 T.C. 375, 382 (1974). *210 In resolving this factual question, greater weight is given to the objective facts rather than to the taxpayer's mere statement of intent. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); sec. 1.183-2(a), Income Tax Regs.
Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors bearing on whether an activity is engaged in for profit. They are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; *211 (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on the activity; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. No single factor, nor the existence of even a majority of the factors, is controlling; rather the facts and circumstances of the case remain the primary test. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). The fact that a taxpayer carries on an activity in a businesslike manner and maintains complete and accurate books and records may indicate that the activity is engaged in for profit. In this case, petitioners did not hire an accountant to set up an accounting system, or any other permanent employees for the horse-related activities. A separate bank account for the horse-related activities was not established. Petitioners also *212 failed to conduct a basic investigation before entering into the horse-related activities. Mr. Tirheimer instead relied on conversations with horse breeders in other parts of the country. He did not make an effort to discuss the profitability of horse breeding with any breeders in northern Minnesota. Considering the harsh weather conditions in northern Minnesota, it seems imperative to make such inquiries. Moreover, petitioners did not thoroughly investigate the cost aspects of the horse business or retain anyone to recommend a business plan with respect to the feasibility of the horse-related activities. Instead, petitioners initially purchased grade (unregistered) horses. In order to make a profit selling this inferior type of horse, petitioners would have to sell a large volume, a requirement which they were not prepared to handle. We believe that no prudent businessman would have invested his limited financial resources in a venture like this without first inquiring about such matters. With only six horses, petitioners could not have generated a profit. Indeed, petitioners did not own a stud, nor were there any deductions on the returns for stud fees. Therefore, it is *213 questionable whether breeding occurred. Moreover, petitioners knew that the cost of maintaining the horses in show condition in Minnesota was prohibitive. This would have required petitioners to keep the horse in a heated barn during the winter months or move the horses to a warmer climate. Instead, petitioners kept the horses outside during the winter and allowed the horses to grow a winter coat. Petitioners admittedly had no expertise regarding the breeding and selling of horses, nor did not hire any experts to consult with them concerning the horse-related activities. Mr. Tirheimer testified that the reason he did not consult experts was that he was afraid they would lead him astray. However, Mr. Tirheimer's own investigation of the horse business conditions and prospects was cursory. He relied on his experience from growing up on a farm in Europe and from reading numerous books and journals regarding horses. As the above demonstrates, petitioners in this case did not carry on their horse-related activities in a businesslike manner. The absence of a profit objective is further demonstrated by the fact that petitioners approached their horse-related activities on a part-time *214 basis. Mr. Tirheimer's time and effort in the activity was limited. He spent approximately 9 months each year in issue working as an analyst in the defense industry in southern California. Moreover, approximately 4 months of each year Mrs. Tirheimer and their son joined him in California. During these periods a neighbor fed and took care of the horses. Regardless of the 4 months in which no one in petitioners' family was taking care of the horses, it cannot be seriously contended that a preteen could carry on a profitable business alone. Any time and effort expended on the horse-related activities was strictly a summertime affair. Finally, petitioners' history of losses with respect to the Minnesota property, as well as petitioners' alternative source of income, are further evidence of a lack of profit objective. Petitioners had never previously engaged in a horse-related business, but they did have a long history of losing money on the Minnesota property. The horse-related activities began in 1979 and have yet to yield a profit. Petitioners' primary source of income for the years at issue was from Mr. Tirheimer's temporary work as an analyst. Petitioners reported approximately *215 $ 50,000 of income for each of the taxable years at issue. Although they are not extremely wealthy, they were in a position to take tax advantage of the investment tax credit and deductions resulting from entering into and maintaining an unprofitable horse-related activity. In analyzing the evidence presented, we must keep in mind that deductions are strictly a matter of legislative grace, and petitioners bear the burden of proving their entitlement to any deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Moreover, we will not accept only self-serving testimony as providing a basis of an actual and honest profit objective. Beck v. Commissioner, 85 T.C. 557, 570 (1985). Upon consideration of all the facts and circumstances, we find that petitioners did not engage in their horse-related activities with an actual and honest objective of making a profit. Petitioners simply did not partake in the necessary planning or analysis which a prudent business person engaging in a venture for profit would have done. "If you don't know where you're going, you might end up somewhere else." [4] Without proper *216 preparation, it is not surprising that the horse-related activities never realized a profit. Accordingly, petitioners are not entitled to the losses or the investment tax credit attributable to the activities for the years at issue. 2. Petitioners' Tax Home
We now address whether petitioners are entitled to deduct travel expenses incurred by Mr. Tirheimer while commuting between petitioners' personal residence in Minnesota and Mr. Tirheimer's place of employment in the Los Angeles metropolitan area. Respondent contends that, even though petitioners maintained a residence in Minnesota, the travel expenses incurred by Mr. Tirheimer are not deductible because Los Angeles, California, was Mr. Tirheimer's principal place of business and was therefore petitioners' tax home for purposes of section 162. Petitioners contend that Minnesota was their tax home and that the expenses are therefore deductible. Petitioners incurred costs for airfare, lodging and meals, *217 and automobile expenses related to Mr. Tirheimer's employment outside of Minnesota. Section 162(a)(2) allows a deduction for travel expenses, including meals and lodging, while away from home in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). Travel expenses for personal reasons, however, are not deductible. Section 162(a)(2) is intended to mitigate the burden of the taxpayer who, because of the travel requirements of his trade or business, must maintain two places of abode and, therefore, incur additional living expenses. Kroll v. Commissioner, 49 T.C. 557 (1968). In order for a traveling expense to be deductible, it must not only be reasonable and necessary and incurred in pursuit of business, but it must be incurred "while away from home". Commissioner v. Flowers, supra at 470. The determination of whether a taxpayer is away from home is "essentially a question of fact". Frank v. United States, 577 F.2d 93, 97 (9th Cir. 1978) (citing Curtis v. Commissioner, 449 F.2d 225, 227 (5th Cir. 1971)). As a general rule, a taxpayer's "home" *218 for purposes of section 162(a)(2) is his principal place of business or employment even though his family residence is located in a different place. Coombs v. Commissioner, 608 F.2d 1269 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 426 (1976); Michaels v. Commissioner, 53 T.C. 269, 273 (1969); Kroll v. Commisioner, supra. If a taxpayer elects to reside away from his place of employment, for personal convenience, his commuting expenses as well as meals and lodging expenses at his place of employment are nondeductible personal expenses. Sec. 262. Petitioners contend that because Mr. Tirheimer's work assignments were all less that 1 year and because they maintained two households the travel expenses are deductible. However, maintaining two households is not determinative of the issue of whether the expenses were incurred while away from home. Bochner v. Commissioner, 67 T.C. 824 (1977). Rather, we focus on the taxpayer's principal place of employment. Coombs v. Commissioners, supra; Michaels v. Commissioner, supra at 273; *219 Whitaker v. Commissioner, 24 T.C. 750 (1955). In Folkman v. United States, 615 F.2d 493, 495-496 (9th Cir. 1980), the Ninth Circuit Court of Appeals adopted an objective approach to this issue which considers: (1) The length of time spent in the two locations, (2) the degree of business activity conducted in each location, and (3) the relative proportion of income derived from each place. [5] See Markey v. Commissioner, 490 F.2d 1249 (6th Cir. 1974), revg. T.C. Memo. 1972-154. Mr. Tirheimer spent approximately 75 percent of each year employed in the Los Angeles metropolitan area. His principal occupation, and the main source of petitioners' income, was associated with Mr. Tirheimer's employment in the defense industry in the Los Angeles metropolitan area. Finally, petitioners reported over $ 110,000 of income related to Mr. Tirheimer's defense-related employment in the Los Angeles metropolitan area as compared to $ 3,000 relating to the horse-related activities in Minnesota. Based on the foregoing, we find that petitioners' principal place of employment during the years at issue was in Los Angeles. Therefore, *220 under the general rule, Los Angeles was their tax home. Petitioners rely on an exception to the general rule. Under this exception, a taxpayer's personal residence may be the tax home if the principal place of business is temporary rather than indefinite. Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958); see Harvey v. Commissioner, 283 F.2d 491, 495 (9th Cir. 1960) revg. 32 T.C. 1368 (1959). These deductions are permissible because it would be unreasonable to require a taxpayer to move his residence to a temporary work location. Tucker v. Commissioner, 55 T.C. 783 (1971). Guiding this inquiry is the underlying question *221 of whether the taxpayer's employment was of such a duration that "it would be reasonable under the circumstances * * * [for] the taxpayer to move to the location of his new employment." Markey v. Commissioner, supra at 1253. Petitioners contend that Mr. Tirheimer's work in California was temporary and that the traveling expenses are deductible under the Peurifoy exception. We disagree. A place of business is a temporary place of business if the employment is such that "termination within a short period could be foreseen". Albert v. Commissioner, 13 T.C. 129, 131 (1949). Conversely, if the taxpayer's employment is likely to last a substantial or indefinite period of time, the taxpayer's home shifts to the new location. See Stricker v. Commissioner, 54 T.C. 355, 361 (1970), affd. 438 F.2d 1216 (6th Cir. 1971). Further, if the temporary employment ripens into employment of substantial or indefinite duration, the situs of such employment becomes the taxpayer's tax home and the traveling expenses are not deductible. Norwood v. Commissioner, 66 T.C. 467, 470 (1976). There are *222 no rules of thumb to distinguish temporary from indefinite employment. However, several criteria are considered important in determining whether employment is indefinite or temporary. McCallister v. Commissioner, 70 T.C. 505 (1978). The factors include: (1) The expected duration of the employment, (2) the size of the project, (3) the available supply of labor, and (4) the actual duration of the employment. From the record as a whole, we are convinced that Mr. Tirheimer employment in the Los Angeles metropolitan area during the years at issue was not temporary. The fact that Mr. Tirheimer worked for three different companies in the Los Angeles area within 3 years is not determinative of whether his work there was temporary. In 1983, Mr. Tirheimer worked for Northrop Corporation for 8 months, then he returned to Minnesota. In 1984, he again worked for Northrop for 6 months and then returned to Minnesota. He also worked for U.S. Engineering for 4 months in 1984. In 1985, Mr. Tirheimer worked through the firm Volt Technical Service for 8 months and then returned to Minnesota. Although Mr. Tirheimer's prospects for each defense contract, viewed separately, *223 may have been temporary employment, the prospects in the Los Angeles metropolitan area were, as a whole, for employment lasting an indefinite or substantial period of time. "Determination of a taxpayer's principal place of business requires consideration of all the taxpayer's job prospects within the employment area." Ellwein v. United States, 778 F.2d 506, 510 (8th Cir. 1985). Moreover, the fact that Mr. Tirheimer intended to leave his job in the spring to return to Minnesota does not make his employment temporary. He was hired to work on specific defense contracts. Each time that he was hired for a project, neither he nor his employer knew the exact duration of employment. This pattern of employment, considered in light of Mr. Tirheimer's testimony that the Los Angeles metropolitan area was a prime area to locate jobs relating to his skills, clearly establishes that the work in the Los Angeles metropolitan area was not temporary. In this situation it would not be unreasonable to expect petitioners to move their residence to the southern California vicinity based on Mr. Tirheimer's testimony that there was a "concentration of defense contractors" in this *224 area and the fact that petitioners' primary source of income was derived from employment in the area. We conclude that the Peurifoy temporary rule does not apply to this employment. The Court of Appeals for the Ninth Circuit has established its own approach to the Peurifoy temporary exception. See Mitchell v. Commissioner, 74 T.C. 578, 582 (1980). In Harvey v. Commissioner, supra at 495, the Court of Appeals set forth its rule as follows: An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes "a long period of time" varies with the circumstances surrounding each case. If such be the case, it is reasonable to expect him to move his permanent abode to his new station, and thus avoid the double burden that the Congress intended to mitigate. * * *
In adopting this approach, the Ninth Circuit rejected a mechanical application of the rule which the Commissioner suggested: "that the place where a taxpayer is employed for an 'indefinite' period, is necessarily his tax home." [6]Id. *225 Although the Ninth Circuit adopted a slightly different approach to the exception, it still considers the "fundamental question" in travel expense cases to be whether it is reasonable to expect the taxpayer to move his residence to his place of employment. Wright v. Hartsell, 305 F.2d 221, 225 (9th Cir. 1962). Additionally, the Ninth Circuit set forth its analysis in Coombs v. Commissioner, 608 F.2d 1269, 1275-1276 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 426 (1976) as follows: "when a taxpayer accepts employment either permanently or for an indefinite time away from the place of his usual abode, the taxpayer's tax home will shift to the new location -- the vicinity of the taxpayer's new principal place of business." We, therefore, focus on the temporary or indefinite nature of the job itself and more specifically whether at the beginning of each taxable year at issue petitioners expected that it was reasonably probable that Mr. Tirheimer's employment in the Los Angeles metropolitan area would last for a long period of time. Mitchell v. Commissioner, supra at 584. *226 Petitioners bear the burden of proving their expectations concerning the duration of employment. However, they introduced no evidence concerning their expectations with respect to the duration of employment in the Los Angeles metropolitan area. Mr. Tirheimer testified that there were numerous employment opportunities in the area. In fact, Mr. Tirheimer spent approximately 9 months of each taxable year at issue in California. Approximately 4 months of each year his family joined him, and finally in November of 1985 petitioners moved to Hemet, California. In Doyle v. Commissioner, 354 F.2d 480 (9th Cir. 1966), affg. T.C. Memo. 1964-110, the Ninth Circuit suggested that 9 months might be an appropriate general dividing line between temporary and indefinite employment. Applying the analysis of the Ninth Circuit to our case, where petitioners returned to California for 9 months each year and, in petitioners' words, there was a "concentration" of defense-related opportunities, we hold that the employment was not temporary. Nothing in the record suggests that petitioners had any reasonable expectations other than it was reasonably probable that *227 Mr. Tirheimer's employment in the Los Angeles metropolitan area would last a long time and that the new defense-related opportunities would continue to transpire. To find that Minnesota was petitioners' tax home would place their home where their heart lies, rather than where there work is. Bochner v. Commissioner, 67 T.C. 824 (1977). Consequently, under the Harvey test, Los Angeles was petitioners' tax home for the years at issue, and the living expenses incurred in the Los Angeles area and the commuting expenses to Minnesota were personal living expenses which are nondeductible under section 262. 3. Moving Expenses
Respondent disallowed approximately $ 2,500 of the moving expenses claimed by petitioners based on a lack of substantiation. Moving expenses are clearly deductible, but as the case with any deduction, petitioners must provide substantiation to prove such amounts were incurred. Secs. 217(a), 6001. Inasmuch as petitioners did not substantiate the disallowed amount either before or at trial, respondent's determination is sustained. 4. Business Expenses
Respondent contends that the expenses which petitioners claimed relating *228 to World-Wide are not deductible because petitioners did not demonstrate that the expenses were necessary in order for Mr. Tirheimer to obtain employment as a defense analyst nor did they show that any of the claimed expenses were incurred at the request of Mr. Tirheimer's employers. Petitioners contend that World-Wide was a profit -motivated enterprise and that all expenses and profits were claimed in compliance with Internal Revenue Service (IRS) forms and instructions. At no point either prior to or during the trial did petitioners address the substance of respondent's contentions. Respondent's determinations are presumed correct, and therefore, petitioners bear the burden of establishing that they were engaged in a trade or business and that the expenses were ordinary and necessary. Rule 142(a). The question of whether a taxpayer is engaged in a trade or business must be decided upon the facts in each case. In Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987), the Supreme Court stated: We accept the fact that to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's *229 primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify.
Generally, section 162(a) allows a deduction for all ordinary and necessary expenses incurred in carrying on a trade or business. An expenditure is considered "necessary" if it is appropriate and helpful to the employee's trade or business. See Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Both of these inquiries are fact specific and require petitioners to come forward with additional evidence. Mr. Tirheimer's testimony regarding this issue was vague and unpersuasive. Of the $ 11,000 of expenses which petitioners claimed, they only substantiated $ 4,000. In each year at issue petitioners claimed a $ 966 depreciation expense and in 1983 and 1985 they claimed $ 900 and $ 3,450 as rental expenses. In addition to the failure to substantiate a significant majority of the claimed expenses, petitioners presented no evidence that the expenses qualified as home office expenses. See sec. 280A. As the above demonstrates, petitioners have not met their burden of proof and, consequently, respondent's determination *230 is sustained.
Before addressing the additions to tax, we note that petitioners in their brief introduce a number of facts to be considered by this Court. However, pursuant to Rule 149(b), petitioners were obligated to produce the evidence at trial and could not introduce it for the first time in their brief. Accordingly, these facts were not utilized in reaching our findings. 5. Additions to Tax
Respondent determined additions to petitioners' Federal income tax under sections 6653(a) and 6661. Petitioners bear the burden of establishing that they are not liable for these additions to tax. Baldwin v. Commissioner, 84 T.C. 859, 871 (1985); Enoch v. Commissioner, 57 T.C. 781, 802 (1972). Section 6653(a) provides for an addition to tax if any part of the underpayment is due to negligence or intentional disregard of the rules or regulations. Negligence is defined as a failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). *231 Respondent's determination that petitioners' underpayment was due to negligence or intentional disregard of the rules or regulations is "presumptively correct and must stand unless the taxpayer can establish that he was not negligent." Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). In support of respondent's negligence determinations, respondent contends that petitioners claimed numerous and substantial deductions of dubious allocability and that they claimed substantial deductions for nondeductible personal and living expenses. Petitioners contend that they operated their business activities with the objective of making a profit, they filed their tax returns according to IRS forms and instructions, and they maintained adequate records to substantiate the disputed deductions. We hold that petitioners intentionally disregarded the pertinent provisions and regulations of the Internal Revenue Code, except with regard to the claimed employee business expenses. Petitioners claimed numerous and substantial deductions of dubious allocability, *232 they failed to fully substantiate their claimed deductions, and it appears as though they claimed business expenses relating to Mr. Tirheimer's employment in southern California both as Schedule C business expenses and as employee expenses incurred while away from home. Finally, the overall picture of petitioners' returns for the years at issue reveals that they claimed substantial deductions for nondeductible personal living expenses. As to the employee business expenses which petitioners claimed, we find that negligence additions under section 6653(a)(2) are not proper because the errors were due to an honest misunderstanding of the law of which an average, reasonable man might be capable. Haman v. Commissioner, 500 F.2d 401, 403 (9th Cir. 1974), affg. T.C. Memo. 1972-118; Standish v. Commissioner, 154 F.2d 1022 (9th Cir. 1946), affg. 4 T.C. 995 (1945). Petitioners' inability to discern the difference between temporary as opposed to indefinite employment in light of the numerous opinions on the subject does not demonstrate negligence. The final issue for consideration is whether petitioners are liable for *233 additions to tax under section 6661 for substantial understatement of income tax liability. Section 6661 provides for an addition to tax equal to 25 percent of the amount of any underpayment which is attributable to a substantial understatement of income tax for any taxable year. Sec. 6661(a); see Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year in issue or $ 5,000. Sec. 6661(b)(1)(A). The understatement is reduced if it is based on substantial authority or is adequately disclosed on the return or in a statement attached to the return. Sec. 6661(b)(2)(B). According to the notice of deficiency and petitioners' tax returns for the taxable years at issue, it is clear that there is a substantial understatement of petitioners' income tax for 1984, 1984, and 1985. Petitioners presented no evidence regarding this issue, nor did they argue that the additions to tax should have been waived by respondent pursuant to section 6661(c). Accordingly, respondent's determinations are sustained. To reflect the foregoing, *234 Decision will be entered under Rule 155. Footnotes
1. 50 percent of interest due on $ 9,443. ↩
2. 50 percent of interest due on $ 11,659. ↩
3. 50 percent of interest due on $ 10,042.↩
1. Petitioners conceded that they are liable for the self-employment tax as determined by respondent for 1985.↩
2. Petitioners conceded that if we held that the horse-related activities were not engaged in for profit, they were not entitled to claim an investment tax credit for 1984 and 1985.↩
3. In the case of horse training or breeding activities, if gross income derived from the activity for 2 or more taxable years in a period of 7 consecutive years exceeds the deductions attributable to such activity, then the activity is presumed to be engaged in for profit. Sec. 183(d)↩. Petitioners did not show that their horse-related activities generated a profit during any of the taxable years at issue, and, therefore, such presumption has no effect in this case.
4. A philosphical adage attributed to Yogi Berra.↩
5. As venue for appeal of this matter lies with the Ninth Circuit, we determine whether petitioners' tax home was in Los Angeles or Minnesota according to the principles established by the Ninth Circuit. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971).
6. The Court of Appeals has elaborated on the Harvey "long period of time" test on a number of occasions. See Wills v. Commissioner, 411 F.2d 537, 541 (9th Cir. 1969), affg. 48 T.C. 308 (1967). The court suggested that a 28-month period would satisfy the long period of time test and that 9 months might be an appropriate general dividing line. Doyle v. Commissioner, 354 F.2d 480 (9th Cir. 1966), affg. T.C. Memo. 1964-110. See also Kasun v. United States, 671 F.2d 1059, 1061 (7th Cir. 1982) (opinion adopted as law of the Ninth Circuit in Neal v. Commissioner, 681 F.2d 1157 (9th Cir. 1982), affg. T.C. Memo. 1981-407↩).